IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GOSNELL DEVELOPMENT CORPORATION
OF ARIZONA, an Arizona corporation; and
SOUTHERN CALIFORNIA PRE-STAIN
CORPORATION, a California corporation,

      Plaintiffs,

      vs.          No. CIV 99-632 JC/WWD  (ACE)

AMERICAN NATIONAL FIRE INSURANCE CO.,
a foreign corporation; ASW INSURERS, INC., a
New Mexico corporation, and DOES I-X,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant American National's Motion for Summary Judgment, filed February 4, 2000 *(Doc. 50)* ("Motion"), Plaintiffs' Cross-Motion for Partial Summary Judgment Regarding Breach of Duty to Defend and Waiver of Coverage Defenses, filed March 29, 2000 *(Doc. 62)* ("Cross-Motion"), Defendant's Motion to Strike Separate Statement of Facts in Support of Plaintiffs' Response to American National's Motion and Plaintiffs' Cross-Motion ("Motion to Strike Separate Statement of Facts"), filed March 30, 2000 *(Doc. 64)*, Plaintiffs' Motion for Oral Argument, filed May 23, 2000 *(Doc. 80)*, and Plaintiffs' Motion to file a supplement to their briefs on the summary judgment motions in this case ("Motion to Supplement"), filed May 24, 2000 *(Doc. 81)*.

The Court has reviewed the motions, the memoranda and exhibits submitted by the parties and the relevant authorities, and has determined that oral argument would not be of material assistance in the determination of these motions. Therefore, Plaintiffs' Motion for Oral Argument will be denied as to these motions. The Court further finds that Defendant's summary judgment

Motion is not well taken and will be denied, that Plaintiffs' Cross-Motion is well taken and will be granted, and that Defendant's Motion to Strike Separate Statement of Facts will be denied as moot. The Court also finds that Plaintiffs' Motion to Supplement regarding the motions at issue in this Opinion will be denied as moot.

## I.     Factual Background

Plaintiffs Gosnell Development Corporation ("Gosnell") and Southern California Pre-Stain Corporation ("Pre-Stain"), as assignees of Fire Research Laboratories, Inc. ("Fire Research"), claim that Defendant American National Fire Insurance Co. ("American National") breached its duty to defend Fire Research against a third-party complaint filed by Pre-Stain. According to Plaintiffs, Fire Research assumed its own defense and eventually entered into a settlement agreement in which judgment was entered against Fire Research in the amount of $1,250,000. The factual background of this case is further described in the Court's Memorandum Opinion and Order, filed on August 3, 1999 *(Doc. 28)*.

## II.    Standard

The parties raise the following issues in their summary judgment motions:  1) whether Defendant American National breached its duty to defend Fire Research against a third-party complaint filed by Pre-Stain; and 2) whether, assuming that Defendant American National breached its duty to defend, it also waived its right to raise coverage defenses to liability in this lawsuit. Summary judgment should be granted if "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The court must "view the evidence and draw any inferences in a light

most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to trial. *See Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

## III.    Discussion

As a preliminary matter, I note that in order to address the parties' motions, the Court did not find it necessary to refer to or rely on statements one through nine in Plaintiffs' Separate Statement of Facts in Support of Plaintiffs' Response to American National's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Partial Summary Judgment, filed April 4, 2000 *(Doc. 70)*. Consequently, Defendant's Motion to Strike Separate Statement of Facts will be denied as moot.

### A.    Whether Defendant American National Breached its Duty to Defend

The insurance policy describes Defendant's duty to defend as extending to any suit seeking those damages to which the policy applies. *See* Businesspro General Liability Coverage ("Policy") at 0050, Ex.1 to Def.'s Mem. Br. in Supp. of Def.'s Mot. ("Mem."), filed Feb. 4, 2000 *(Doc. 51)*. An insurer's duty to defend is independent of and broader than its duty to indemnify. *See Valley Improvement Ass'n v. United States Fidelity and Guar. Corp.*, 129 F.3d 1108, 1116 (10th Cir. 1997) (citing *State Farm Fire & Cas. Co. v. Price*, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct. App. 1984) (overruled on other grounds)); *Transamerica Ins. Group v. Hinkle-Keeran Group, Inc.*, Nos. 93-2330, 94-2001, 53 F.3d 343 (10th Cir. Apr. 21,1995) (unpublished table decision), *available at* 1995 WL 251054, at \*\*3. In order to determine whether an insurer has a duty to defend, the Court must consider the factual allegations of the complaint in light of the terms of the insurance policy. *See Martin v. West American Ins. Co.*, 1999-NMCA-158, ¶12, 993 P.2d 763, 766 (1999) (citing *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo*, 114 N.M. 695, 697,

845 P.2d 789, 791 (1992)).  The allegations of a complaint do not trigger the duty to defend if they clearly fall outside the coverage of the policy.  *See Martin*, NMCA-158 ¶12, 993 P.2d at 766.

An insurer's duty to defend may also arise "from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage." *American Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990).  As reflected in its statutes and uniform jury instructions, New Mexico also imposes a duty on insurance companies to "act reasonably under the circumstances to conduct a timely investigation and fair evaluation of its duty to defend."  UJI 13-1703 NMRA 1999; *see also* NMSA 1978 59A-16-20(C) (listing an insurer's failure to adopt "reasonable standards for the prompt investigation . . . of insureds' claims under policies" as a prohibited insurance practice)  Moreover, if the allegations against the insured are unclear, "[t]he insurer is required to resolve ambiguities in favor of potential coverage." *Valley*, 129 F.3d at 1116 (citing *Price*, 101 N.M. at 442, 684 P.2d at 528).  Finally, I note that in determining the insurer's duty to defend, the Court need not decide whether the underlying facts *actually* constitute property damage caused by an occurrence under the insurance policy.  *See State Farm Fire & Cas. v. Ruiz*, 36 F. Supp.2d 1308, 1312 (D.N.M. 1999).  It need only determine whether the allegations of the complaint, together with any other factual information known to the insurer, potentially or arguably bring the claim within the coverage of the policy.  *See Winters v. Transamerica Ins. Co.*, No. 98-2000, 194 F.3d 1321 (10th Cir. Sep. 9, 1999) (unpublished table decision), *available in* 1999 WL 699835 at **2 (citations omitted).

In September of 1992, Fire Research tendered its defense to Defendant American National regarding the third-party complaint filed by Pre-Stain.  In October of 1992, Defendant reviewed the complaint filed by Gosnell against Pre-Stain.  *See* Dep. of Ms. Merrell at 43-47, Ex. A to Pls.' Reply to Def.'s Resp. to Pls.' Cross-Motion, filed May 5, 2000 *(Doc. 71)*.  Because the Gosnell complaint

is additional information known to Defendant, it will be considered in determining whether Defendant has a duty to defend. Moreover, under the circumstances of this case, I find that if Defendant determined that it had no duty to defend based on Pre-Stain's allegations in its third-party complaint, Defendant's duty to act reasonably in evaluating its duty to defend required it to timely review the Gosnell complaint. *See, e.g., Blackburn v. Fidelity & Deposit Co.*, 667 So.2d 661, 668 (Ala. 1995) ("[T]he insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured."). In this case, it was the complaint that Gosnell filed against Pre-Stain that gave rise to the complaint that Pre-Stain filed against Fire Research. Pre-Stain, in its third-party complaint against Fire Research, expressly refers to the Gosnell complaint and specifies the date and court where the action was filed. *See* Third-Party Compl. ¶ 5, Ex. A to Def.'s Reply to Pls.' Resp. to Def.'s Mot., filed Mar. 30, 2000 *(Doc. 66)*. Moreover, Pre-Stain contends that Fire Research is liable "to the extent that [Pre-Stain] is found to be liable to Gosnell as a consequence of the alleged inadequacy in the siding panels." *See id.* ¶ 16. Because Defendant reviewed the Gosnell complaint and because a reasonable investigation in this case would so require, I will consider the Gosnell complaint as one of the facts known to Defendant, or of which Defendant reasonably should have been aware, in order to determine whether Defendant owed a duty to defend Fire Research.

*Plaintiffs' Motion to Supplement*

In their Motion to Supplement, Plaintiffs request leave to brief the Court on the significance of *G & G Services., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, 993 P.2d 751, (1999), *cert. granted in part*, No. 26,116, 997 P.2d 822 (N.M. Feb. 18, 2000). The New Mexico Supreme Court granted certiorari in this case on an issue involving "the appropriate standard for investigation of insurance claims." *G & G*, Petition for Writ of Certiorari to the Court of Appeals at 1, filed in the

Supreme Court of New Mexico Dec. 21, 1999. In its petition for certiorari, the appellant in that case asserts that the court in *G & G* adopted "a duty to investigate that is broader that [sic] New Mexico law requires, and that imposes unwarranted burdens and expense." *Id.* at 8.

As discussed *infra*, I find that Defendant's duty to defend arises from the allegations of the third-party complaint and the Gosnell complaint. Moreover, I find that Defendant had actual knowledge of the Gosnell complaint and that its duty to timely review the Gosnell complaint arose under New Mexico law established prior to *G & G*. Thus, I do not need to address whether Defendant had a duty to conduct further investigation in order to determine its duty to defend. Consequently, any holdings of *G & G* that address the insurer's duty to investigate beyond the allegations contained in the pleadings are irrelevant to this Opinion. Accordingly, Plaintiffs' Motion to Supplement regarding the motions at issue in this Opinion will be denied as moot.

> 1.   *Whether the complaint against Fire Research alleges an "occurrence" under the terms of the insurance policy*

Under the terms of the insurance policy issued to Fire Research, Defendant American National agreed to "pay those sums that [Fire Research] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Policy at 0050, Ex.1 to Def.'s Mem. Defendant's policy "applies to . . . 'property damage' only if . . . [it is] caused by an 'occurrence.'" *Id.* "Property damage" is defined in the policy as:

   a.  physical injury to tangible property . . . or

   b.  loss of use of tangible property that is not physically injured.

*Id.* at 0061. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The interpretation of the terms of an insurance policy is a matter of law. *See Valley*, 129 F.3d at 1115.

Defendant American National contends that the allegations of the third-party complaint do not allege an "occurrence" as defined under the general liability insurance policy. Although "occurrence" is defined in the insurance policy as "an accident," the word accident is not similarly defined in the policy. Because the term accident is not defined within the insurance policy, it "must be interpreted in its usual, ordinary and popular sense." *O'Rourke v. New Amsterdam Cas. Co.*, 68 N.M. 409, 412, 362 P.2d 790, 792 (1961). Accident "denotes an unlooked for mishap, or an untoward event which is not expected or designed." *Id.* at 413, 362 P.2d at 792 (internal quotations omitted). "The test as to whether an injury is unexpected . . . is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing." *Id.* at 413, 362 P.2d at 792-93. "[A]n insurance policy designed to compensate for damages suffered by 'accidental means' is no less effective when the damages result from negligence." *King v. Travelers Ins. Co.*, 84 N.M. 550, 553, 505 P.2d 1226, 1229 (1973).

In this case, the factual assertions of Pre-Stain's third-party complaint are, at a minimum, ambiguous as to whether they allege property damage caused by an "occurrence" as defined under the policy. Gosnell asserted in its suit against Pre-Stain that "the Shakertown shingles were irreparably damaged" as a result of Pre-Stain's "careless, unreasonable and negligent manner" of applying the fire retardant material. Gosnell Compl. ¶¶ 68, 69, Ex. A to Def.'s Mem. Pre-Stain, in turn, alleges that Fire Research provided the instructions for the application of its fire retardant paint and asserts that Fire Research is liable "for the alleged inadequacy in the siding panels" and their failure to meet the fire spread specifications. Third-Party Comp. ¶¶ 9, 16, 17, 31, Ex. A to Def.'s Reply to Pls.' Resp. to Def.'s Mot. Although these allegations indicate that Fire Research intentionally instructed Pre-Stain in the use and application of its product, the allegations of negligent misrepresentation do not indicate that Fire Research likewise intended for the application of its

product to harm the shingles. Nor does the complaint clearly indicate that Fire Research or Pre-Stain could reasonably foresee that Fire Research's instructions would result in damage to the shingles. Thus, Pre-Stain's third-party complaint arguably alleges that its shingles were damaged through an "unlooked for mishap."

Finally, Plaintiffs present evidence that Defendant was also in doubt as to whether the policy applied under these circumstances. *See* Letter from Ms. Merrell dated Sep. 29, 1992, Ex. D to Pls.' Reply to Def.'s Resp. to Pls.' Cross-Motion (stating that "coverage is questionable" and "within ninety days we will be able to make a coverage decision"). While I do not find the evidence of Defendant's doubt dispositive, it is "persuasive evidence of the policy's [or complaint's] ambiguity." *King*, 84 N.M. at 556, 505 P.2d at 1232. Under New Mexico law, "[t]he insurer is required to resolve ambiguities in favor of potential coverage." *Valley*, 129 F.3d at 1116 (citing *Price*, 101 N.M. at 442, 684 P.2d at 528). If a complaint's allegations potentially or arguably fall under the coverage of the insurance policy, the insurer is obligated to defend. *See Progressive*, 110 N.M. at 744, 799 P.2d at 1116. Because the claims against Fire Research arguably allege property damage based on an occurrence, Defendant's duty to defend was triggered under the terms of the policy.

Defendant relies on three cases as support for its assertion that the claims against Fire Research are not covered under the terms of the policy. However, the facts of those cases are distinguishable from those of the case before this Court. In *Jakobson Shipyard, Inc. v. Aetna Cas. & Surety Co.*, 961 F.2d 387 (2d Cir. 1992), the court did not find an "occurrence" under a liability policy where the insured's defective steering mechanism allegedly caused property damage to boats that were also manufactured by the insured. In finding no "occurrence," the court specifically distinguished its facts from a case where an insured's defective motors damaged property that was not manufactured by the insured. Similarly, the court in *Royal Plastics, Inc. v. State Automobile Mut.*

*Ins. Co.*, 650 N.E.2d 180 (Ohio Ct. App. 1994), found that a complaint against a supplier did not allege an "occurrence," but consisted merely of "claims by a manufacturer against a component parts supplier that improperly manufactured component parts." *Id.* at 225-26.  As in *Jakobson*, the defective parts apparently caused damage only to other parts also provided by the supplier.[1]  In contrast, the allegations of Pre-Stain's third-party complaint and Gosnell's complaint may be construed as allegations that Fire Research's negligent misrepresentations and/or its fire retardant paint caused damage, not to its own product, but to the shingles manufactured by Pre-Stain.  Thus, the facts before this Court are distinguishable from those described in *Jakobson* and *Royal Plastics*.

In Defendant's third case, *Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083 (Ill. App. Ct. 1993), the court denied coverage for a claim against an insured who manufactured faulty air conditioning systems which caused extremely high building temperatures.  The Illinois appellate court in *Diamond* found that even if unintentional, such a product failure is foreseeable and cannot constitute an accident "because the natural and ordinary consequences of an act do not constitute an accident." *Id.* at 1092 (internal quotations omitted).  It is not clear that the law in New Mexico is in accord with the principles of *Diamond*.  *See, e.g., King*, 84 N.M. at 553, 505 P.2d at 1229 (concluding that an insurance policy may compensate for damages suffered by 'accidental means' resulting from negligence).  However, assuming that the parties could foresee that Fire Research's fire retardant or instructions might fail a fire spread specification test, it is not clearly foreseeable that the application of fire retardant according to Fire Research's instructions would irreparably damage the shingles and necessitate their removal from a building.  *See* Gosnell Compl. ¶ 69, Ex. A to Def.'s Mem.  Thus, even assuming the applicability of the principles in *Diamond*, the facts of this case are distinguishable.

---

[1] The complaint alleged that the defective components "damaged other components of the completed pump product." *Royal Plastics*, 650 N.E.2d at 225.

Additionally, an insurer's duty to defend is triggered "even though the complaint fails to state facts with sufficient clarity . . . [to] determine . . . whether or not the action is within the coverage of the policy . . . [if] the alleged facts tend to show an occurrence within the policy." *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619-20, 642 P.2d 604, 605-06 (1982) (quoting *American Employers' Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)). Pre-Stain's negligent misrepresentation claim alleges that Fire Research's instructions resulted in the alleged inadequacy of the siding panels. Regardless of whether Pre-Stain used the words "occurrence" or "accident," these factual allegations tend to show an occurrence under Defendant's insurance policy. *See Valley*, 129 F.3d at 1120 (finding a duty to defend where the complaint failed to allege "an accident," but did not clearly indicate that the damage was not the result of an accident). A reasonable construction of the allegations against Fire Research is that, through its representations, Fire Research unintentionally caused irreparable damage to the siding panels. Accordingly, Defendant's duty to defend is triggered because these allegations tend to show that Fire Research is liable for "property damage" to the shingles caused by an "occurrence" within the coverage provisions of the insurance policy.

> 2. *Whether the claims against Fire Research are excluded from policy coverage by Exclusion M*

Defendant contends that even if the third-party complaint alleges claims that are covered under the insurance policy's general provisions, those claims are specifically excluded from coverage by an exclusionary provision in the policy. The liability policy contains an exclusion ("Exclusion M") expressly providing that its coverage does not apply to:

> m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > (1) a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

>> (2) a delay or failure by you or anyone acting on your behalf to perform a contract . . . in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

Policy at 0053, Ex.1 to Def.'s Mem. Defendant argues that the third-party claims allege only a "loss of use" of the panels arising from either a breach of contract or deficient fire retardant, and are consequently excluded from coverage.[2] Any exclusions contained in an insurance policy must be narrowly construed in favor of coverage. *See King*, 84 N.M. at 556, 505 P.2d at 1232 (citing *Roach v. Churchman*, 431 F.2d 849 (8th Cir. 1970)). In order to determine that no duty to defend exists based on an exclusion, a court must find that all claims arose from excluded acts. *See Transamerica*, 1995 WL 251054, at **5. In this case, I cannot say, as a matter of law, that all claims against Fire Research arise from damages excluded by Exclusion M.

Defendant construes Pre-Stain's complaint to allege only a loss of use of property "that has not been physically injured." Although this may not be an unreasonable assumption, it is also not unreasonable to infer from Pre-Stain's allegations that the inadequacy of the shingles resulted from a physical injury. Pre-Stain's complaint may be read to allege that the application of fire retardant according to Fire Research's instructions harmed, marred, or spoiled the shingles' material in some manner. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1164, 1706 (1971) (defining injure and physical). Physical injury is not defined in the policy, and inadequacy is a broad and ambiguous term. Moreover, Gosnell's description of the need to remove the "irreparably damaged" and "valueless" shingles from a building supports an inference that the shingles suffered physical injury. *See* Gosnell Compl. ¶¶ 68, 69, Ex. A to Def.'s Mem.

---

[2] Defendant does not allege or argue that Exclusion M bars coverage of the third-party claims under the exclusion's "impaired property" clause.

After resolving all ambiguities in favor of the insured, I find that the allegations potentially or arguably assert that Fire Research is liable for causing physical injury to Pre-Stain's shingles. Under the facts of this case, Exclusion M did not relieve Defendant of its duty to defend. Thus, Defendant was required to provide a defense to Fire Research in the primary lawsuit until relieved of that duty by a court. *See Mullenix*, 97 N.M. at 620, 642 P.2d at 606 ("[T]he insurer is under a duty to defend the insured in the primary action until the court finds that the insurer is relieved of liability under the noncoverage provision of the policy."). However, Defendant neither challenged the factual allegations of the complaint, nor requested to be relieved of its duty to defend in the primary lawsuit. Consequently, Defendant breached its duty to defend by refusing to defend Fire Research under these circumstances. *See State Farm Fire & Cas. Co. v. Ruiz*, 36 F. Supp.2d 1308, 1316 (D.N.M. 1999). Consequently, I will grant summary judgment in favor of Plaintiffs on the issue of whether Defendant breached its duty to defend.[3]

**B.   Whether Defendant American National May Raise Coverage Defenses**

Defendant asserts that even if it breached its duty to defend, it may continue to contest liability by proving that the claims against Fire Research are not actually covered under the insurance policy. Plaintiffs maintain that if Defendant unjustifiably refused to defend, it is precluded from raising coverage defenses to liability. Plaintiffs cite to *Ruiz* and *Valley* as support for their position. Defendant counters by pointing to *Servants of the Paraclete v. Great American Ins. Co.*, 866 F. Supp. 1560 (D.N.M. 1994), as support for its assertion that it is not barred from raising coverage defenses to liability.

---

[3] Because the Court finds that Exclusion M did not relieve Defendant of its duty to defend, I need not address Plaintiff's argument that Defendant waived its right to raise Exclusion M as a defense.

The court in *Ruiz* was faced with the identical issue before this Court regarding coverage defenses. That court concluded that while *Servants* held that an insurer may raise coverage defenses after an unjustified refusal to defend, the Tenth Circuit Court of Appeals in *Valley* held that it may not. *See Ruiz*, 36 F. Supp.2d at 1317-18. The *Ruiz* court found that it "must adhere to Tenth Circuit precedent when faced with a conflict such as this." *Id.* at 1318. This Court must similarly adhere to Tenth Circuit precedent. Thus, in accordance with the principles expressed in *Valley* and *Ruiz*, the Court finds that because Defendant American National breached its duty to defend, it "may no longer raise any coverage defenses." *Id.* Moreover, Defendant is liable, at least to the limit of its policy, for the amount of the settlement "to the extent that the settlement was reasonable and entered into in good faith." *Id.* Accordingly, summary judgment will be granted in favor of Plaintiffs on the issue of whether Defendant may continue to raise coverage defenses to liability.

**IV.   Conclusion**

Plaintiffs' Motion for Oral Argument on the motions addressed in this Opinion will be denied. The Court further finds it unnecessary to rely on Plaintiffs' Separate Statement of Facts, thus Defendant's Motion to Strike Separate Statement of Facts will be denied as moot. The Court finds that Defendant American National breached its duty to defend Fire Research, and may not raise any coverage defenses to liability in this lawsuit. Accordingly, Defendant's summary judgment Motion will be denied, and Plaintiffs' Cross-Motion for Partial Summary Judgment will be granted. Finally, because the holdings of *G & G* do not affect the decisions in this Opinion, Plaintiffs' Motion to Supplement will be denied as moot.

Wherefore,

IT IS ORDERED that Plaintiffs' Motion for Oral Argument *(Doc. 80)* is **denied** as to the motions addressed in this Memorandum Opinion and Order.

IT IS ORDERED that Defendant's Motion to Strike Separate Statement of Facts in Support of Plaintiffs' Response to American National's Motion and Plaintiffs' Cross-Motion *(Doc. 64)* is **denied** as moot.

IT IS ORDERED that Defendant's Motion for Summary Judgment *(Doc. 50)* is **denied**.

IT IS ORDERED that Plaintiffs' Cross-Motion for Partial Summary Judgment Regarding Breach of Duty to Defend and Waiver of Coverage Defenses *(Doc. 62)* is **granted**.

IT IS ORDERED that Plaintiffs' Motion to file a supplement to their briefs *(Doc. 81)* is **denied** as moot as to the motions addressed in this Memorandum Opinion and Order.

DATED this 30th day of June, 2000.

                                        */s/ John Edwards Conway*
                                      **CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:

    Marty Harper
    Ernest Collins, Jr.
    Goodwin Raup PC
    Phoenix, Arizona

    Robert D. Taichert
    Thomas J. McBride
    Hinkle, Hensley, Shanor & Martin, LLP
    Albuquerque, New Mexico

Counsel for Defendant:

    James H. Johansen
    Butt, Thornton & Baehr, P.C.
    Albuquerque, New Mexico